**UNITED STATES BANKRUPTCY COURT**       FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
|     Trinsum Group, Inc., *et al.*, | : |  |
|  | : | Case No. 08-12547 (AJG) |
|  | : |  |
|         Debtors. | : |  |
|  | : |  |

-------------------------------------------------------

|  |  |  |
|---|---|---|
| Marianne T. O'Toole as | : |  |
| Distributing Agent for | : |  |
| Trinsum Group, Inc., *et al.*, | : |  |
|  | : |  |
|       Plaintiff, | : | Adv. Pro. Nos. 10-03304, 10-03305, |
|  | : | 10-03313 (AJG) |
|  | : |  |
|       v. | : |  |
|  | : |  |
| Ramesh Karnani, Peter W. Kontes, | : |  |
| Robert S. Ruotolo, | : |  |
|  | : |  |
|       Defendants. | : |  |
|  | : |  |

-------------------------------------------------------

## OPINION REGARDING DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINTS

**APPEARANCES:**

SILVERMANN ACAMPORA, LLP
Attorneys for Plaintiff
100 Jericho Quadrangle, Suite 300
Jericho, NY  11753

      By:    Gerard R. Luckman, Esq.
              Jay S. Hellman, Esq.
              Katina Brountzas, Esq.

BOND, SCHOENECK & KING, PLLC
Attorneys for Defendants
One Lincoln Center

Syracuse, NY  13202

By:   Stephen A. Donato, Esq.
      Louis Orbach, Esq.

**ARTHUR J. GONZALEZ**
**Chief United States Bankruptcy Judge**

Before the Court are motions to dismiss (the "Motions to Dismiss") the respective

amended complaints (the "Amended Complaints") brought by Marianne T. O'Toole (the

"Distributing Agent" or the "Plaintiff") as distributing agent for Trinsum Group, Inc.

(collectively with its affiliates, the "Debtors" or "Trinsum"), against Ramesh Karnani

("Karnani"), Peter W. Kontes ("Kontes"), and Robert S. Ruotolo ("Ruotolo") (collectively, the

"Defendants").  In the Amended Complaints, the Distributing Agent seeks to avoid certain cash

transfers made by the Debtors to the Defendants between 2003 and 2008, and alleges that the

transfers are constructive fraudulent conveyances under applicable state law and provisions of

title 11 of the United States Code (the "Bankruptcy Code").  Additionally, the Distributing Agent

alleges that these transfers unjustly enriched the Defendants.

Based on the pleading standard set forth in *Iqbal*[1] and *Twombly*,[2] the Court finds that the

Amended Complaints lack sufficient factual allegations to adequately plead the causes of action

brought by the Distributing Agent.  Therefore, the Court grants the Motions to Dismiss in their

entirety.  The section 548 claims are dismissed with prejudice.  The remaining claims, however,

are dismissed without prejudice and the Court grants the Plaintiff leave to amend the complaints

within forty five (45) days in order to allege sufficient facts to survive the motion to dismiss

standard.  In the event that the Plaintiff fails to properly re-plead within the specified time period,

the Court will grant the Motions to Dismiss with prejudice in their entirety.

---

[1] *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009).
[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

**Jurisdiction and Venue**

The Court has jurisdiction over these adversary proceedings pursuant to 28 U.S.C. § 1334, and the proceedings were referred to this Court pursuant to 28 U.S.C. § 157(a) and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.).  The claims are core proceedings as defined in 28 U.S.C. §§ 157(b)(1), 157(b)(2)(E), 157(b)(2)(H), and 157(b)(2)(O).  Venue is proper in the Court pursuant to 28 U.S.C. § 1409.

**Background**

**A. Overview and Procedural History**

The Debtors operated an international strategic and financial advisory firm that advised major corporations around the world.  (Amended Complaint against Karnani [the "Karnani Amended Complaint"], Case No. 10-03304, ECF No. 13, ¶ 7; Amended Complaint against Kontes [the "Kontes Amended Complaint"], Case No. 10-03305, ECF No. 13, ¶ 7; Amended Complaint against Ruotolo [the "Rutolo Amended Complaint"], Case No. 10-03313, ECF No. 13, ¶ 7).  In 2007, Marakon Associates, Inc. ("Marakon") and Integrated Finance Limited ("IFL") merged to form Trinsum Group, Inc. ("Trinsum Group").  (Karnani Amended Complaint, ¶ 8; Kontes Amended Complaint, ¶ 8; Ruotolo Amended Complaint, ¶ 8).  The newly formed company, however, was not as successful as anticipated, and on July 3, 2008, an involuntary chapter 7 petition was filed against Trinsum Group.  *Id.* at ¶¶ 9-10.  On January 28, 2009, the Debtors moved to convert the chapter 7 case to a chapter 11 case.  *Id.* at ¶ 11.  The Court granted the motion and converted the case to a chapter 11 on January 29, 2009.  *Id.*

On February 24, 2009, IFL filed a voluntary chapter 11 petition with the Court, and subsequently the IFL and Trinsum cases were jointly administered pursuant to a March 6, 2009 order.  *Id.* at ¶¶ 13-14.

On June 7, 2010, the Debtors commenced adversary proceedings against the Defendants, as well as approximately eighteen additional alleged former officers of the Debtors.  (Karnani Memorandum of Law in Support of Motion to Dismiss the Amended Complaint [the "Karnani Memo of Law"], ECF No. 22, 1; Kontes Memorandum of Law in Support of Motion to Dismiss the Amended Complaint [the "Kontes Memo of Law"], ECF No. 22, 1; Ruotolo Memorandum of Law in Support of Motion to Dismiss the Amended Complaint [the "Ruotolo Memo of Law"], ECF No. 22, 1).  In the original complaints (the "Original Complaints"), the Debtors brought constructive fraudulent conveyance actions under sections 548 and 544 of the Bankruptcy Code against the Defendants.  (Original Complaint against Karnani, ECF No. 1; Original Complaint against Kontes, ECF No. 1; Original Complaint against Ruotolo, ECF No. 1).  In particular, the Debtors alleged that the Defendants and the Debtors executed subordinated promissory notes which required the Debtors to pay the Defendants in exchange for their shares of stock.  *Id.*

On November 10, 2010, the Court issued an order confirming the Debtors' liquidation plan.  (Case No. 08-12547, ECF No. 358).  The plan provided that Marianne O'Toole would be appointed the Distributing Agent, and upon the confirmation date, she would be considered a successor to the Debtors.  *Id.* at § 2(g).  Accordingly, she took over all actions the Debtors had commenced before plan confirmation, including these adversary proceedings.

On March 9, 2011, the Defendants filed motions to dismiss the Original Complaints. (Karnani Motion to Dismiss the Original Complaint, ECF No. 9; Kontes Motion to Dismiss the Original Complaint, ECF No. 9; Ruotolo Motion to Dismiss the Original Complaint, ECF No. 9).

4

The Defendants argued that the Original Complaints failed to state a claim for which relief could be granted.  (Memorandum of Law in Support of Defendant Karnani's Motion to Dismiss the Original Complaint, ECF No. 10, 1; Memorandum of Law in Support of Defendant Kontes' Motion to Dismiss the Original Complaint, ECF No. 10, 1; Memorandum of Law in Support of Defendant Ruotolo's Motion to Dismiss the Original Complaint, ECF No. 10, 1).  The Defendants alleged that the Original Complaints did not meet the pleading standard set forth in *Bell Atlantic Corp. v. Twombly*.  *Id*.

On March 30, 2011, the Distributing Agent filed a response to these motions and also amended the Original Complaints.  (Plaintiff's Response to Defendant Karnani's Motion to Dismiss the Complaint, ECF No. 12; Plaintiff's Response to Defendant Kontes' Motion to Dismiss the Complaint,  ECF No. 12; Plaintiff's Response to Defendant Ruotolo's Motion to Dismiss the Complaint, ECF No. 12; Karnani Amended Complaint; Kontes Amended Complaint; Ruotolo Amended Complaint).  The Distributing Agent, in amending the Original Complaints, alleged additional factual information and included another cause of action for unjust enrichment against the Defendants.  (Karnani Amended Complaint, ¶¶ 52-54; Kontes Amended Complaint, ¶¶ 51-53; Ruotolo Amended Complaint, ¶¶ 50-52).

On May 25, 2011, the Defendants moved to dismiss the Amended Complaints for failure to state a claim upon which relief can be granted.  (Karnani's Motion to Dismiss the Amended Complaint, ECF No. 21; Kontes' Motion to Dismiss the Amended Complaint, ECF No. 21; Ruotolo's Motion to Dismiss the Amended Complaint, ECF No. 21).  The Defendants argue that the Distributing Agent's Amended Complaints still contain "boiler plate allegations" and formulaic recitations of the elements of the causes of actions alleged.  (Karnani Memo of Law, 1; Kontes Memo of Law, 1; Ruotolo Memo of Law, 1).  Furthermore, the Defendants allege that the

5

unjust enrichment claim, which was not present in the Original Complaints, "is just as bald and conclusory and time-barred." *Id.*

In her response, the Distributing Agent opposes the dismissal and argues she has sufficiently stated plausible fraudulent conveyance and unjust enrichment claims against the Defendants under the applicable pleading standards.  (Plaintiff's Memorandum of Law in Opposition to Defendant Ramesh Karnani's Motion to Dismiss, ECF No. 25, 2; Plaintiff's Memorandum of Law in Opposition to Defendant Peter Kontes' Motion to Dismiss, ECF No. 25, 2; Plaintiff's Memorandum of Law in Opposition to Robert Ruotolo's Motion to Dismiss, ECF No. 25, 2).  Specifically, the Distributing Agent asserts that the Amended Complaints "provide[] ample detail in support of the fraudulent conveyance and unjust enrichment claims including allegations regarding the specific transfers made by the Debtor to the Defendant, the nature of the transactions underlying the transfers, the amount of the transfers, and factual allegations concerning the Debtors' insolvency." *Id.*

A hearing was held on the matter on July 20, 2011.

After the hearing, the Court issued an order on October 5, 2011, directing the parties to submit a written statement as to whether they consented to the Court entering a final order regarding the matters at issue.  (ECF No. 32).  In a letter dated October 14, 2011, the Distributing Agent consented to entry of final orders.  (ECF No. 33).  The Defendants, however, submitted a letter dated October 14, 2011 and stated they did not consent to entry of final orders with respect to any of the matters at issue.  (ECF No. 34).[3]

## B.  Allegations Set Forth in the Amended Complaints

In the Amended Complaints, the Distributing Agent alleges that the Defendants "converted shares of Trinsum stock into notes obligating Trinsum to re-pay" the Defendants and

---

[3] The Court will address these issues upon the conclusion of these proceedings in bankruptcy court.

"authorize[d] and/or accept[ed] such note re-payments, at a time when Trinsum was insolvent or which payments rendered Trinsum insolvent." (Karnani Amended Complaint, ¶ 2; Kontes Amended Complaint, ¶ 2; Ruotolo Amended Complaint, ¶ 2). On or about April 30, 2002, the Debtors and Karnani executed two subordinated promissory notes in the amounts of $210,383.04 and $162,216.96. (Karnani Amended Complaint, ¶¶ 19-20). The Debtors and Karnani executed three more subordinated promissory notes on or about October 31, 2002 in the amounts of $1,566,210.00, $901,080.00 and $886,110.00. *Id.* at ¶¶ 21-23. In repayment of the notes, Trinsum allegedly transferred a total of $4,149,183.00 over the course of 2003 through 2008 to Karnani. *Id.* at ¶ 26.

With respect to Kontes, the Distributing Agent alleges that on or about April 30, 2003 two subordinated promissory notes were executed between Kontes and the Debtors in the amounts of $1,171,723.00 and $220,676.00. (Kontes Amended Complaint, ¶¶ 19-20). On or about January 31, 2004, three subordinated promissory notes were executed in the amounts of $7,442,746.30, $3,198,907.70 and $1,600,689.00. *Id.* at ¶¶ 21-23. Between 2003 and 2008, the Distributing Agent asserts that the Debtors allegedly transferred a total of $8,740,731.00 to Kontes on account of these notes. *Id.* at ¶ 34.

The Distributing Agent also alleges that on or about April 30, 2003, Ruotolo and the Defendants executed a subordinated promissory note in the amount of $75,849.00. (Ruotolo Amended Complaint, ¶ 19). Further, on or about January 31, 2004, three additional subordinated promissory notes were executed in the amounts of $50,538.11, $278,402.89 and $351,734.52. *Id.* at ¶¶ 20-22. Based on these notes, the Distributing Agent alleges that the Debtors transferred a total of $1,201,244.00 to Ruotolo from 2003 through 2008. *Id.* at ¶ 23.

The Distributing Agent then discusses the Debtors' financial situation starting from around 2002. (Karnani Amended Complaint, ¶¶ 30-35; Kontes Amended Complaint, ¶¶ 29-34; Ruotolo Amended Complaint, ¶¶ 29-33). The Distributing Agent states that the merger between Marakon Associates and IFL was not the "success story that was envisioned," (Karnani Amended Complaint, ¶ 9; Kontes Amended Complaint, ¶ 9; Ruotolo Amended Complaint, ¶ 9) and that "revenue declined by approximately 43% between 2002 and 2004 and never recovered." (Karnani Amended Complaint, ¶ 31; Kontes Amended Complaint, ¶ 30; Ruotolo Amended Complaint, ¶ 29). At the same time revenue was decreasing, "debt levels rose approximately 75% between fiscal years 2002 and 2004." (Karnani Amended Complaint, ¶ 33; Kontes Amended Complaint, ¶ 32; Ruotolo Amended Complaint, ¶ 31). The Distributing Agent lists the net cash flow figures and net income figures for the fiscal years 2003 through 2008 as negative for every year. (Karnani Amended Complaint, ¶¶ 34-35; Kontes Amended Complaint, ¶¶ 33-34; Ruotolo Amended Complaint, ¶¶ 32-33).

Lastly, the Distributing Agent alleges that under New York law the Defendants were unjustly enriched as a result of the transfers described above. (Karnani Amended Complaint, ¶¶ 52-54; Kontes Amended Complaint, ¶¶ 51-53; Ruotolo Amended Complaint, ¶¶ 50-52).

## Discussion

### A.  Standard of Review for a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012(b). On a Rule 12(b)(6) motion to dismiss, a court looks to Federal Rules of Civil Procedure 8 and 9 in order to determine the applicable standard in reviewing the adequacy of a complaint. As the Amended Complaints do not involve causes of action described in Rule 9, which require heightened pleading, the applicable standard

is outlined in Rule 8.[4]  In particular, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

In evaluating the sufficiency of a complaint, a court must accept as true all factual allegations contained in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  A court, however, is not "bound to accept as true [any] legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949-50 (2009); *accord Air Atlanta Aero Engineering Ltd. v. SP Aircraft Owner I, LLC*, 639 F.Supp.2d 185, 189 (S.D.N.Y. 2009).  "[O]nly a complaint that states a plausible claim for relief survives" a Rule 12(b)(6) motion.  *Iqbal*, 129 S.Ct. at 1949-50.

The Supreme Court has clarified the standard in evaluating pleading sufficiency under Rule 8.  *See generally Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Iqbal,* 129 S.Ct. at 1949-50 (providing guidance regarding the application of *Twombly*).  In order to rise to the level of plausibility required by *Twombly* and *Iqbal*, the complaint must contain "enough factual matter (taken as true)" to "raise [the] right to relief above the speculative level," *Twombly*, 550 U.S. at 555-56.  *Accord Campo*, 635 F.Supp.2d 323, 328 (*citing ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Iqbal*, 129 S.Ct. at 1949).  The factual allegations must plausibly suggest that the defendant is liable for the conduct alleged.  *See Twombly*, 550 U.S. at 557.  "Plausibility [] depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences

---

[4] Constructive fraudulent conveyance actions under both the Bankruptcy Code and applicable state law do not require a showing of actual intent to defraud.  Therefore, the heightened pleading standard for fraud as outlined in Rule 9 is not applicable to the Amended Complaints.  *See In re Actrade Fin. Techs. Ltd.,* 337 B.R. 791, 801-02 (Bankr. S.D.N.Y. 2005).

unreasonable." *In re Old CarCo LLC*, No. 11 Civ. 5039 DLC (S.D.N.Y. Nov. 22, 2011) (*citing*

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

Although "detailed factual allegations" are not necessary, "a formulaic recitation of the

elements of a cause of action will not do." *Iqbal*, 129 S.Ct. at 1949 (*quoting Twombly*, 550 U.S.

at 555). A court should dismiss a complaint that merely contains "'naked assertion[s]' devoid of

'further factual enhancement.'" *See Iqbal*, 129 S.Ct. at 1950 (*quoting Twombly*, 550 U.S. at 557).

Overall, the motion to dismiss standard is a "context-specific task that requires the reviewing

court to draw on its judicial experience and common sense" when analyzing a plaintiff's

complaint. *See id.*

## B.  Constructive Fraudulent Transfers under 11 U.S.C. § 548(a)(1)(B)

The Distributing Agent seeks to avoid transfers made by the Debtors to the Defendants

under, *inter alia*, 11 U.S.C. § 548(a)(1)(B). Section 548(a)(1)(B) requires that: (1) the debtor

transferred an interest in property; (2) the debtor (i) was insolvent at the time of the transfer or

became insolvent as a result of the transfer, (ii) was engaged in business or was about to engage

in business for which the debtor's remaining property constituted unreasonably small capital, or

(iii) intended to incur or believed that it would incur debts beyond its ability to pay as they

matured; and (3) the debtor received less than reasonably equivalent value in exchange for such

transfer. *In re Hydrogen, LLC*, 431 B.R. 337, 352-53 (Bankr. S.D.N.Y. 2010), *citing In re M.

Fabrikant & Sons, Inc.*, 394 B.R. 721, 735 (Bankr. S.D.N.Y. 2008).

Section 548 explicitly provides trustees with a two-year reach-back period in which they

can seek to avoid transfers made voluntarily or involuntarily by the debtor. *See* 11 U.S.C. §

548(a)(1). This two-year period runs from when a petition was filed and not when the trustee

files a complaint. *See id.* ("The trustee may avoid any transfer . . . incurred by the debtor, that

10

was made or incurred on or within 2 years before the date of the filing of the petition.").[5]  In this

case, the involuntary petition against Trinsum Group was filed on July 3, 2008 and, therefore, the

Distributing Agent can seek to avoid transfers made to the Defendants as early as July 3, 2006.

Some of the transfers on their face appear to fall within the limitations period prescribed

by section 548(a)(1)(B).  *See, e.g.,* Karnani Amended Complaint, ¶¶ 19-23, 26; Kontes Amended

Complaint, ¶¶ 19-23, 25; Ruotolo Amended Complaint, ¶¶ 19-22, 24.  The Distributing Agent,

however, must sufficiently plead the three elements listed above to survive a motion to dismiss,

namely that (i) a transfer was made, (ii) the debtor was insolvent at the time or rendered

insolvent by the transfer, and (iii) the transfer was for less than reasonably equivalent value.  *In

re Hydrogen, LLC*, 431 B.R. 337, 352-53 (Bankr. S.D.N.Y. 2010) (*citing In re Fabrikant &

Sons, Inc.*, 394 B.R. 721, 735 (Bankr. S.D.N.Y. 2008)).

The Distributing Agent seems to provide adequate factual information regarding the

specifics of the transfers in question.  She includes the transferor and the transferees as well as

the amount of each transfer and the year in which each took place.  Therefore, with respect to the

first required element, the Amended Complaints include enough factual information for the

Court to reasonably infer that transfers took place and that the Debtors were the transferors.

Turning next to the reasonably equivalent value element, the Amended Complaints need

to allege that the Debtors received less than reasonably equivalent value in their exchanges with

the Defendants.  Under 11 U.S.C. § 548(d)(2)(A), "'value' means property, or satisfaction or

securing of a present or antecedent debt of the debtor . . . ."  The transfers at issue were made

between 2003 and 2008, but the promissory notes associated with these transfers were executed

between 2002 and 2004.  (Karnani Amended Complaint, ¶¶ 19-23, 26; Kontes Amended

---

[5] Section 546(a) restricts the trustee's avoidance powers under section 548 of the Bankruptcy Code by limiting the period of time in which the trustee can commence such an action.  *See* 11 U.S.C. 546(a).  The Original Complaints, however, were timely filed within this proscribed period and therefore section 546(a) is not at issue here.

Complaint, ¶¶ 19-23, 25; Ruotolo Amended Complaint, ¶¶ 19-22, 24). Since the notes were executed outside of the two-year reach-back period, the Distributing Agent cannot seek to avoid the obligations the Debtors owe to the Defendants on account of these notes. Specifically, the transfers are viewed as paying an antecedent debt (the notes), and it is presumed the transfers were made "for value." *See* 11 U.S.C. § 548(d)(2)(A). The Amended Complaints, then, fail to meet the reasonably equivalent value requirement because the transfers are considered "for value" under the statute.

Because the Amended Complaints fail to sufficiently plead the less than reasonably equivalent value requirement, the Court concludes that the constructive fraudulent transfer claims under section 548(a)(1)(B) do not survive the Motions to Dismiss.[6] The transfers were made pursuant to antecedent debt and the Distributing Agent cannot seek to avoid the promissory notes as those claims would be time-barred.

## C.  State Constructive Fraudulent Transfers under 11 U.S.C. § 544(b)

The Amended Complaints also allege that the transfers made between 2003 and 2008 on account of the subordinated promissory notes executed by the Debtors to the respective Defendants are constructive fraudulent transfers under 11 U.S.C. § 544(b). Section 544(b) provides:

> [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502 (e) of this title. 11 U.S.C. § 544(b).

The Distributing Agent only addresses New York law, without alleging facts to support that New York law should apply to the causes of action alleged. Without proper factual support regarding

---

[6] Since the Amended Complaints fail to plead one of the elements of the cause of action at issue, there is no need to discuss whether the insolvency element was met. As explained in further detail below, however, the Amended Complaints do not sufficiently plead the insolvency element for constructive fraudulent conveyance actions.

the applicable law for the section 544(b) claims, the Court must perform a choice-of-law analysis prior to ruling on whether the state-law constructive fraudulent transfer claims should be dismissed.

   *i. Choice-of-Law Analysis*

   When performing a choice-of-law analysis, a court should follow the choice-of-law rules of the forum state. *Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599, 607-08 (2d Cir. 2001). In New York, "the law of the jurisdiction with the most significant contacts to the relevant transfers and relevant parties applies to a state constructive fraudulent transfer claim brought under section 544(b) of the Code. Contacts to be considered include the domicile, residence, place of incorporation and place of business of the parties; the place of injury; and the place of injury-causing conduct." *In re Hydrogen*, 431 B.R. 337, 353-54 (Bankr. S.D.N.Y. 2010), *citing In re WorldCom, Inc.*, 2003 WL 238619218, at *40 (Bankr. S.D.N.Y. Oct. 31, 2003).

   In these adversary proceedings, the Debtors are Delaware corporations and list their principal place of business in their bankruptcy petitions as New York. Additionally, as of the filing of the Amended Complaints, two of the Defendants are domiciled in Connecticut, and one is domiciled in New York. (Karnani Amended Complaint, ¶ 16; Kontes Amended Complaint, ¶16; Ruotolo Amended Complaint, ¶ 16). There is no information in the Amended Complaints regarding where the transfers took place, where the notes were executed, or where the Defendants were domiciled when each of the transfers took place. Thus, there is not enough information for the Court to determine the applicable state law for the section 544(b) claims.

The Court will address the two likely applicable state laws, specifically the laws of New York and Delaware, based on the Debtors' state of incorporation and principal place of business.[7]

In New York, a transfer can be avoided as a constructive fraudulent conveyance if: (1) the transfer was made without fair consideration; and (2) either (a) the debtor was insolvent or was rendered insolvent by the transfer, (b) the debtor was left with unreasonably small capital, or (c) the debtor intended or believed that it would incur debts beyond its ability to pay as the debts matured. *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 734 (Bankr. S.D.N.Y. 2008) (*citing* N.Y. Debt. & Cred. §§ 273-75). The statute of limitations for constructive fraudulent conveyance claims in New York is six years. *See* N.Y.C.P.L.R. § 213. As with the section 548(a)(1)(B) claims, the statute of limitations period runs from when the bankruptcy petition is filed, not the date the complaint is filed. *See In re Bernard L. Madoff Inv. Securities Inc.*, 445 B.R. 206, 231 (Bankr. S.D.N.Y. 2011) ("Although the New York statute of limitations for fraudulent conveyance actions allows a creditor to recover transfers made six years before the filing of the complaint, it is well established that once a bankruptcy petition is filed, section 546(a) of the Code is triggered, allowing a trustee to recover transfers made six years before the petition date.").

In Delaware, a transfer is considered a constructive fraudulent transfer if: (1) the debtor received less than reasonably equivalent value in exchange for such transfer; and (2) either the debtor (a) was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation, (b) was engaged or was about to engage in a business or a transaction for which the

---

[7] Based on the two Defendants' domiciles in Connecticut (Karnani Amended Complaint, ¶ 16; Kontes Amended Complaint, ¶ 16), it is possible that the applicable law in these two proceedings might be Connecticut law. Connecticut has adopted the UFTA, however, which is the same act that Delaware has adopted in dealing with constructive fraudulent conveyance claims. Therefore, the discussion evaluating the Amended Complaints' pleading sufficiency under Delaware law would likely apply in the event Connecticut law were found to be the applicable state law.

remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (c) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.  Del. Code Ann. tit. 6, §§ 1301-1312.  *See In re Plassein Int'l Corp.*, 405 B.R. 402, 411 (Bankr. D. Del. 2008).  Under Delaware law, a constructive fraudulent transfer claim is "extinguished" four years from the occurrence of the wrong.  *See* Del. Code Ann. tit. 6, § 1309.

ii.  *Pleading Sufficiency under New York Law*

There is a potential statute of limitations issue regarding the two notes executed to Karnani on or about April 30, 2002, as well as any transfers made according to those notes. (Karnani Amended Complaint, ¶¶ 19-20).  If the date of execution is taken as true,[8] any transfer made pursuant to those notes would be considered "fair consideration" for purposes of New York law because the transfers were made to pay down an antecedent debt.  *See* N.Y. Debt. & Cred. § 272 (listing satisfying an antecedent debt as fair consideration).[9]

---

[8] In the Amended Complaint, the Distributing Agent alleges that these notes were not counter-signed and returned by Karnani until August or September 2003, which should be the effective date for statute of limitations purposes. (Karnani Amended Complaint, ¶ 24).  If this is taken as true, then the transfers made on account of these notes would fall within the statute of limitations period.  This does not change the outcome, however, because any fraudulent conveyance actions brought based on these transfers still fail to sufficiently plead the elements of the cause of action alleged as discussed further below.

[9] Some courts have held that when seeking to avoid transfers under section 544(b), a promissory note and the transfers made on account of that note can be separated for purposes of statute of limitations questions because the provision and applicable state law specifically list "obligations incurred" and "transfers" separately.  *See In re Omega Door Co., Inc.*, 399 B.R. 295 (B.A.P. 6th Cir. 2009); *In re NM Holdings, Inc.*, 407 B.R. 232 (E.D. Mich. 2009); *In re Emergency Monitoring Technologies, Inc.*, 366 B.R. 476 (Bankr. W.D. Pa. 2007).  In contrast, *In re Le Café Crème* ruled in the opposite direction and held that if a contract is indivisible, the date that the promissory note was executed is the relevant date for statute of limitations purposes.  *See In re Le Café Crème, Ltd.*, 244 B.R. 221, 238 (Bankr. S.D.N.Y. 2000).  Significantly, however, there is a caveat to the cases allowing separation of notes from transfers.  *See In re NM Holdings, Inc.*, 407 B.R. 232, 267 (Bankr. E.D. Mich. 2009).  In particular, the courts in the above cases noted that if the notes were executed outside the statute of limitations period, the transfers may still be viewed as paying off antecedent debt, and would therefore be unavoidable.  *See id.* ("The non-avoidability of contracts made outside of the statute of limitations period ultimately may be important to the outcome of some of Gold's fraudulent transfer theories. . . [I]n order to avoid a transfer, Gold must show that the transfer was made 'without receiving a reasonably equivalent value.'  Gold might not be able to satisfy this element for payments made under a non-avoidable contract, because in such a case, the payment resulted in a dollar-for-dollar reduction of the debtor's antecedent debt under the contract.  Reduction of antecedent debt is 'value' for purposes of these statutes.").  Additionally, it is relevant to note that the cases allowing separation of notes from transfers involved state laws that

*a. Insider Exception*

New York law, however, recognizes an "insider" exception to the antecedent debt rule whereby a transfer may still be avoided if it was made to "an officer, director, or major shareholder of the transferor." *See In re Sharp International Corp.,* 403 F.3d 43, 54 (2d Cir. 2005)**,** *citing Atlanta Shipping Corp., Inc. v. Chemical Bank,* 818 F.2d 240, 249 (2d Cir. 1987); *see also HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir. 1995); *In re Old CarCo LLC*, 435 B.R. 169, 190 (Bankr. S.D.N.Y. 2010).  This exception is grounded in the idea that an insolvent corporation's transfer of monies to an officer of the company is presumably in bad faith.  *See, eg.*, *Farm Stores, Inc. v. School Feeding Corp.*, 477 N.Y.S.2d 374, 377-78 (1984). Fair consideration, however, requires a finding that the transfer was for reasonably equivalent value and that it was executed in good faith with respect to both of the parties involved.  *See HBE Leasing Corp.*, 48 F.3d at 634.  Based on this presumption, the transfers at issue here cannot be said to be made in fair consideration and the first element required for state constructive fraudulent conveyance actions would be satisfied.  *Cf. Southern Industries v. Jeremias*, 411 N.Y.S.2d 945, 949 (1978).

As discussed below with respect to the other notes and transfers at issue, however, the Amended Complaints do not adequately plead insolvency as required by New York law. Implicit in the insider exception is the idea that the corporation be insolvent at the time the transfers took place.  *See Farm Stores, Inc.*, 102 A.D.2d at 253; *see also Southern Indus.*, 411 N.Y.S.2d at 949 (discussing the development of the "insider" exception from the former Stock Corporation Law in New York).  The Distributing Agent cannot avoid transfers made pursuant to

---

followed the Uniform Fraudulent Transfers Act ("UFTA"), while the New York case involved state law that followed the Uniform Fraudulent Conveyances Act ("UFCA").  The statutory language of the UFTA has been interpreted to technically allow the separation as there are different definitions for "conveyances" and "transfers."  Nonetheless, the concept of antecedent debt prevails in situations where the transfer was made on account of a non-avoidable obligation.

the notes executed in April 2002 based on this exception because she has failed to sufficiently plead insolvency as discussed below.

 *b. Insolvency*

 Regarding the other notes and transfers allegedly made between the Debtors and the Defendants, the Amended Complaints must sufficiently plead each element as outlined under New York Debtor & Creditor Law §§ 273-75.  Turning first to the element of insolvency, New York Debtor & Creditor Law § 271 provides that a person is insolvent when the "present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."  The operative reference point for determining insolvency is the time at which the transfer took place.  *See Lippe v. Bairnco Corp.*, 249 F.Supp.2d 357, 379-80 (S.D.N.Y. 2003) (*citing Am. Inv. Bank, N.A. v. Marine Midland Bank, N.A.*, 595 N.Y.S.2d 538 (1993); *Durland v. Crawford*, 158 N.Y.S. 692, 693 (1916)).  Therefore, insolvency of the transferor for the purposes of the statute cannot be presumed from subsequent insolvency at a later point in time.  *See Hopfan v. Knauth*, 156 Misc. 545, 549 (Mun. Ct. 1935).[10]

 For purposes of New York constructive fraudulent conveyance law, insolvency is analogous to the Bankruptcy Code's definition, which requires some sort of "balance sheet" test or information provided that the Court can use to infer that the corporation's liabilities exceeded their assets at the time the transfers took place.  *See In re Nirvana Restaurant, Inc.*, 337 B.R. 495, 506 (Bankr. S.D.N.Y. 2006) (internal citations omitted).  The "present fair salable value of [] assets" requires there to be an evaluation of the market value of the assets at the time the transfers took place.  *See In re Roblin Indus., Inc.*, 78 F.3d 30, 35 (2d Cir. 1996); *see generally*

---

[10] The fact that an involuntary petition was filed against the Debtors is not sufficient evidence to support the insolvency element for purposes of the statute.  *See Schutte v. Rosenblum*, 13 Misc. 2d 818 (Sup 1958).

*Castellano v. Osborne*, 16 F.2d 187 (2d Cir. 1926).  Additionally, there should be information as

to the level of liquidity of the transferor's assets.  *U.S. Trust Co. of N.Y.  v. Gill & Duffus, Inc.*,

189 A.D.2d 655 (1st Dep't 1993).  Often, there is valuation provided of a company's assets or

probable liabilities when trying to prove this element.  *See, e.g.*, *In re Nirvana*, 337 B.R. at 506-

08.

The Amended Complaints include net income figures and net cash flow figures for each

year from 2003-2008.  (Karnani Amended Complaint, ¶¶ 34-35; Kontes Amended Complaint, ¶¶

33-34; Ruotolo Amended Complaint, ¶¶ 32-33).  These lists are insufficient for the Court to

determine whether the Debtors were insolvent or rendered insolvent by the transfers.  The

Amended Complaints also allege that revenue declined by approximately 43% every year

between 2002 and 2004, and debt levels rose 75% between 2002 and 2004.  (Karnani Amended

Complaint, ¶¶ 31-33; Kontes Amended Complaint, ¶¶30-32; Ruotolo Amended Complaint, ¶¶

29-31).  The Distributing Agent also alleges that there were other unsecured creditors at the time

besides the Defendants.  (Karnani Amended Complaint, ¶ 36; Kontes Amended Complaint, ¶ 35;

Ruotolo Amended Complaint, ¶ 34).  These percentage figures of the decrease in revenue and the

rise in debt levels do not rule out the possibility that the Debtors may have had a reserve such

that they were not insolvent or rendered insolvent.

Without more detailed information, the Amended Complaints fail to sufficiently plead the

insolvency element required under New York law to bring a constructive fraudulent conveyance

action under section 544(b).  As all the elements of a cause of action must be sufficiently pled to

survive a 12(b)(6) motion, the claims under section 544(b) and New York Debtor & Creditor

Law §§ 273-75 are dismissed.

*c. Fair Consideration*

The Court, however, will also address the element of fair consideration in the event the Distributing Agent chooses to amend the causes of action against the Defendants. Additionally, New York law allows insolvency to be presumed if the transfer was made without fair consideration. *See In re Jacobs*, 394 B.R. 646, 672 (Bankr. E.D.N.Y. 2008) (*citing Feist v. Druckerman*, 70 F.2d 333, 334-35 (2d. Cir. 1934)).

Under New York law, the element of fair consideration requires both (1) fair equivalency of the consideration given for the transfer, and (2) good faith by both the transferor and transferee. *See* N.Y. Debt. & Cred. § 272. There is a presumption of good faith if the transferee gave equivalent value in exchange for the transferor's property. *See In re* Jacobs, 394 B.R. 646, 660 (*citing HBE Leasing Corp.*, 48 F.3d 623, 636 (2d Cir. 1995). Accordingly, although the Amended Complaints do not need to include facts to support lack of good faith at this stage, they need to provide some facts to support that the consideration of Trinsum stock was less than fairly equivalent to the cash transfers made to the Defendants.

The notes were executed in exchange for the repurchase of company stock, but there are no facts in the pleadings regarding how much the stock was worth at the time the transfers took place or how many shares of stock were transferred with respect to each promissory note. Without this information, it is impossible for the Court to reasonably infer whether the transfer was for less than reasonably equivalent value. Therefore, the Amended Complaints fail to plead the fair consideration element required under New York Debtor & Creditor Law. The Court cannot presume insolvency, and the constructive fraudulent conveyance actions arising under New York law are dismissed.

*iii. Pleading Sufficiency under Delaware Law*

Under Delaware law, all the promissory notes were executed outside the four-year statute of limitations period. *See* Del. Code Ann. tit. 6, § 1309. Since the transfers were made on account of these notes, the transfers in question would be considered payment of antecedent debt and "for value" under Delaware law. *See* Del. Code Ann. tit. 6, § 1303(a) ("Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied. . . .").

*a. Insider Exception*

Section 1305(b), though, specifically provides that:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent. Del. Code Ann. tit. 6, § 1305(b).

In order for this insider exception to apply, the Distributing Agent must plead that: (1) the Defendants were insiders; (2) the Debtors were insolvent at the time of the transfer; and (3) the Defendants, as insiders, had reasonable cause to believe that the Debtors were insolvent. *See In re Troll Commc'ns, LLC*, 385 B.R. 110, 122 n.19 (Bankr. D. Del. 2008). Under Delaware law, the Defendants would likely qualify as insiders by definition because they do not dispute that they were former officers of the Debtors. Del. Code Ann. tit. 6, § 1301(7).

*b. Insolvency*

With respect to the element of insolvency, the Amended Complaints do not provide sufficient factual information for the Court to infer that the Debtors were insolvent at the time of the transfers. Similar to New York, Delaware law uses a "balance sheet" test when analyzing the element of insolvency for constructive fraudulent transfer claims. *See* Del. Code Ann. tit. 6, § 1302; *see also Trenwick Am. Lit. Trust v. Ernst & Young, LLP*, 906 A.2d 168, 195 n.74 (Del. Ch.

20

2006) (internal citations omitted).  Generally, there must be some sort of financial data or analysis provided so that the court can infer the company's liabilities exceeded its assets at the time the transfers in question took place.  *See In re Troll Commc'ns, LLC*, 385 B.R. at 123-24; *In re Midway Games, Inc.*, 428 B.R. 303, 321 (Bankr. D. Del. 2010).

As discussed in the analysis of the claims under New York law, net income figures and net cash flow figures are insufficient to support the element of insolvency.  The Amended Complaints, therefore, fail to sufficiently plead insolvency as required under Delaware law because the financial data provided is inadequate for a court to reasonably infer that the Debtors were insolvent or rendered insolvent from the transfers in question.

### c. Reasonable Cause

Further, even if the Distributing Agent had produced such figures, the Distributing Agent does not bring forward any facts that the Defendants had "reasonable cause to believe that the [D]ebtor[s] [were] insolvent."  Del. Code Ann. tit. 6 § 1305(b).

### iv. Conclusion

Therefore, if the Distributing Agent chooses to re-plead, additional facts should be included to sufficiently allege each of the elements required under the applicable state law and also address whether New York, Delaware or some other state law should govern these causes of action.

## D.  Unjust Enrichment

Lastly, the Amended Complaints assert the Defendants were unjustly enriched as a result of the cash transfers and, as a result, the Distributing Agent is entitled to all the monies transferred by the Debtors to the Defendants from 2003 through 2008 on account of the promissory notes.  The Distributing Agent does not address which state law applies to these

unjust enrichment claims and, therefore, the Court must perform a choice-of-law analysis once
again before ruling on these claims.

    *i. Choice-of-Law Analysis*

As the Distributing Agent's unjust enrichment claims are based on the transfers, the
choice-of-law analysis is largely the same as that of the state constructive fraudulent conveyance
claims. New York applies an interest analysis to claims in equity, including unjust enrichment
claims. *See In re Hydrogen*, 431 B.R. at 359, *citing Icebox-Scoops, Inc. v. Finanz St. Honore*,
676 F. Supp. 2d 100, 109-10 (E.D.N.Y. 2009) (remaining citations omitted). Once again, the
Court will address the sufficiency of the Amended Complaints under New York law as well as
Delaware law.

In New York, a claim for unjust enrichment must assert that: (1) the defendant was
enriched; (2) at the plaintiff's expense; and (3) equity and good conscience militate against
permitting defendant to retain what the plaintiff is seeking to recover. *In re Hydrogen*, 431 B.R.
at 359 (*citing Carroll v. LeBoeuf, Lamb, Greene & MacRae, LLP*, 623 F. Supp. 2d 504, 514
(S.D.N.Y. 2009)). With respect to the statute of limitations issue, the Defendants assert three
years is the applicable time period if a plaintiff is seeking monetary damages,[11] whereas the
Distributing Agent asserts six years is the proper statute of limitations period.[12]

The elements for unjust enrichment claims under Delaware law are similar to that of New
York law. In particular, unjust enrichment claims can be brought in Delaware if there has been
"unjust retention of a benefit to the loss of another, or the retention of money or property of
another against the fundamental principles of justice or equity and good conscience." *Kuroda v.
SPJS Holdings, Inc.*, 971 A.2d 872, 891 (Del. Ch. 2009). The elements of unjust enrichment

---

[11] In support, the Defendants cite *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 263 (S.D.N.Y. 2008).
[12] In support, the Distributing Agent cites *Gaind v. Peierot*, 2006 WL 846268 (S.D.N.Y. 2006); *Congregation Yetev Let D'Satmar, Inc. v. 26 Adar N.B. Corp.*, 192 A.D.2d 501 (2d Dep't 1993).

under Delaware law are: (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by law. *See Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. Sup. Ct. 2010) (citations omitted).

The statute of limitations under Delaware law is three years from the occurrence of the injury that caused the defendant to be unjustly enriched. *See* Del. Code Ann. tit. 10 § 8106; *Vichi v. Koninklijke Philips Elecs. N.V.*, 2009 WL 4345724, at *15 (Del. Ch. Dec. 1, 2009) ("Delaware law sets a three year statute of limitations for claims for unjust enrichment . . . and breach of fiduciary duty"). Specifically, under this section, even if the victim of the wrongful act is unaware of the injury, the statute of limitations still begins at the occurrence of the wrong, unless some tolling exception applies. *See Wal-Mart Stores, Inc. v. AIG Life Ins., Co.*, 860 A.2d 312, 318-21 (Del. Sup. Ct. 2004).

*ii. Pleading Sufficiency under New York Law*

The most significant aspects of an unjust enrichment claim are not only that the defendant benefitted from a particular occurrence, but also that the benefit was unjust. *See generally, Waldman v. Englishtown Sportswear, Ltd.*, 92 A.D.2d 833 (1st Dep't 1983). In order to raise the claim to the level of plausibility required by *Twombly*, the Distributing Agent must adequately plead all the elements for unjust enrichment set forth under New York law. The Amended Complaints, however, do not allege enough facts to support this cause of action and instead contain just legal conclusions. No evidence is put forth pointing to the fact that the Defendants were "enriched," and it cannot be inferred from the Amended Complaints that the Debtors' transferring of cash to the Defendants was unjust. *See In re Hydrogen, LLC*, 431 B.R. at 359 (*citing Pawaroo v. Countrywide Bank*, 2010 WL 1048822, at *7 (E.D.N.Y. Mar. 18, 2010); *see*

23

*also APS Food Systems, Inc. v. Wards Foods, Inc.*, 70 A.D.2d 483 (1st Dep't 1979).  The Amended Complaints, therefore, do not include much more than a "formulaic recitation" of the required elements and for this reason do not survive the Motions to Dismiss.  *See Twombly*, 550 U.S. at 555.

      *iii.  Pleading Sufficiency under Delaware Law*

      Under Delaware's three-year statute of limitations for unjust enrichment claims, some of the Distributing Agent's claims can be dismissed as time-barred.  *See In re Fruehauf Trailer Corp.*, 250 B.R. 168, 185 (D. Del. 2000).  In bankruptcy, the filing of a bankruptcy petition extends the filing time by "two years after the order for relief."  *See id.* (*citing* 11 U.S.C. § 108(a)).  The order for relief was filed in 2008, and as a result, any transfers that occurred outside of three years from 2008 cannot be the subject of an unjust enrichment claim because the statute of limitations had already expired before the filing.  *See id.*  In the Amended Complaints, there are unjust enrichment claims alleged with respect to all the transfers listed, which took place between 2003 and 2008.  The unjust enrichment claims based on transfers between 2003 and 2005 are dismissed as time-barred since they are outside the three year look-back period. *See id.*

      With respect to the transfers that fall within the statute of limitations period, the Amended Complaints fail to adequately plead all of the required elements and do not raise the right to relief above the speculative level.  *See Twombly*, 550 U.S. at 555-56.  Since there are insufficiencies in the pleadings, the remaining claims for unjust enrichment must be dismissed. Although the Amended Complaints only address the unjust enrichment claims from the perspective that New York law applies, as the analysis under Delaware law is similar to that of New York law, the unjust enrichment claims are dismissed in the case Delaware law applies.

As this is the first time the Distributing Agent's complaints have included unjust enrichment claims, the claims are dismissed without prejudice. In the event that the Distributing Agent chooses to amend the unjust enrichment claims against the Defendants, she must plead facts to support each required element and also include facts as to which state law applies.

## E.  Leave to Amend

After an initial amendment to a complaint, Federal Rule of Civil Procedure 15(a)(2) provides that further leave to amend should be freely granted at the court's discretion when justice so requires. Fed. R. Civ. P. 15(a)(2). *See Bouas v. Sociedad Maritima San Nicholas, S.A.*, 252 F. Supp. 286, 287 (S.D.N.Y. 1965). In these adversary proceedings, the Distributing Agent can plead additional facts to cure some of the defects of the Amended Complaints described earlier in the Opinion. With respect to the constructive fraudulent conveyance claims under 11 U.S.C. § 548(a)(1)(B), however, the claims are barred because the Code does not recognize an insider exception to the antecedent debt rule and therefore the Distributing Agent cannot meet the element that requires the transfer to be for less than reasonably equivalent value. No additional facts would remedy this insufficiency, and, therefore, the Court denies leave to re-plead the causes of action under section 548(a)(1)(B).

Therefore, the Distributing Agent is granted leave to amend the Amended Complaints, except the section 548(a)(1)(B) claims, under the liberal standard for granting leave as provided by Rule 15(a)(2).

## Conclusion

Based on the foregoing, the Motions to Dismiss filed by the Defendants are granted in their entirety without prejudice. The Distributing Agent is granted leave to amend the specified

dismissed claims against the moving Defendants, which excludes the section 548 claims, within

forty five (45) days of the entry of an ordering regarding this Opinion.

The Defendants are to settle an order consistent with this opinion.


Dated: New York, New York
November 29, 2011




_____/s/ Arthur J. Gonzalez_____
**HONORABLE ARTHUR J. GONZALEZ**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**